SHIELDS, J.
This case is before tbis court on appeal from the judgment of the court of common pleas of Coshocton county, and involves the title to certain real estate which the plaintiffs seek to have partitioned.
The plaintiffs set up that as children and heirs at law of James P. Darling, deceased, they are each seized in fee simple of a one fourth interest in certain real estate described in their amended petition. That the defendant E. C. Darling, a son of the said James P. Darling, has a one-fourth interest therein, and that he has received the rents and profits arising from said real estate since June 9, 1918, when the said James P. Darling died, leaving no widow surviving him, and leaving sufficient personal' property to pay all debts and claims against his estate.
The said E. C. Darling and the defendant J. Floyd Moore claim an interest in said real estate adverse and hostile to the rights and estate of the plaintiffs therein.
*700 Partition of said real estate is prayed for, that the said E. C. Darling be required to account for said rents and profits, that the claims of the defendants E. C. Darling and J. Floyd Moore’s interests adverse to plaintiff’s interests in said real estate may be declared null and void, and that the plaintiff’s title be quieted against the same.
The defendant E. C. Darling in a separate answer admits that he is a son of the said James P. Darling, deceased, and that said decedent left no widow surviving him, and that he left no debts that his personal estate will not fully pay, and he denies all the other allegations in the plaintiff’s said petition.
In a cross petition he says that he is the owner in fee simple and in actual possession of tracts numbered 1 and 3 of the real estate described in the plaintiff’s said petition, and he denies that the plaintiff’s, or either of them, have any interest in or title to said numbered tracts, or either of them, or that this defendant’s title thereto is a cloud upon any real estate owned by the plaintiffs, or either of them, and he says that said claim of the plaintiffs in this respect is unfounded and wholly untrue, and he asks that said claim be adjudged null and void and that this defendant’s title thereto be quieted.
A general denial of the allegations of the defendant’s answer and cross-petition is made by the plaintiffs.
The case was heard on a transcript of the evidence taken upon the trial in the court below, and the facts developed upon that trial were substantially as follows: James P. Darling at the time of his death left surviving him four children, the plaintiffs and the defendant, E. C. Darling; that he then owned the real estate described in the plaintiff’s amended petition; that prior to his death and on February 25, 1916, he executed four several deeds, one to each of his said four children, conveying to each of them certain parts of the real estate described in said amended petition; that said deeds were on said day executed and delivered by him to L. N. Staats, an attorney at Coshocton, Ohio, to be held by him until the death of said grantor when he (Staats) was instructed and directed by the said James P. Darling, deceased, to deliver said deeds to each of the grantees named therein; that on the same day of the execution and delivery of said *701 deeds, the said James P. Darling also executed a power of attorney to the said L. N. Staats, containing further and specific instructions relative to said deeds; that upon the death of the said James P. Darling, the said L. N. Staats delivered said deeds to each of the grantees named therein, agreeably to said instructions and directions, which said deeds were by each of said grantees subsequently entered of record in the recorder’s office in said Coshocton county.
On behalf of the plaintiffs it was claimed that the deeds mentioned are not valid but inoperative as such for various reasons stated in oral argument and in the brief of counsel.
Contracts as related to deeds are to be interpreted by the same rules of law applicable to other contracts, namely, to' ascertain and carry out the intention of the grantor. Technical rules.of construction are not favored in this class of cases, and as held by the courts, they are not to be so applied as to defeat the intention of the grantor, the controlling object being “to ascertain and give effect to the intention of the parties as gathered from the entire instrument, together with the surrounding circumstances, unless such intention is in conflict with some unbending canon of construction or settled rule of property, or is repugnant to the terms of the grant. Furthermore, the primary or dominant intent must prevail over a secondary intent, where the two are inconsistent. Wherefore if two clauses are inconsistent they must be construed so as to give effect to the intention of the parties as collected from the whole instrument.” With this statement of the law before us, illustrating as it does the necessity of first ascertaining the intention of the contracting parties, we think it sufficiently appears from an examination of said transcript of evidence that the said James P. Darling undertook to divide his real estate between his said children during his lifetime by the execution of deeds to them of certain parts thereof, that he deposited them with a third party to be delivered to the grantee named therein, upon his death, and that they were so delivered and subsequently entered of record by said grantees. Nothing appears that said decedent was under any disability, nor that the rights of any creditors were prejudiced, nor is any *702 claim made that his act was induced or influenced by any word or action of either of said grantees.
As owner of this real estate it is not questioned but that the said J ames P. Darling had a right to dispose of it as he saw fit, and in the manner he saw fit, provided of course that the same was lawfully done. Here, as stated, his plan of distributing and dividing his property was laid before the said L. N. Staats who prepared and became the custodian of the deeds, at the grantor’s request, for the purpose stated. But it is contended on behalf of the plaintiffs, admitting that said deeds were executed at the time and for the purpose stated and were delivered by the custodian thereof after the death of the said James P. Darling to the grantees therein named, that said deeds were not his deeds and “were not deposited with the purpose and intent of effecting a present conveyance.” Looking to the authorities bearing upon this question, in this State, among others, we find it held in Mitchell v. Ryan, 3 Ohio St. 377, that—
“No precise form of words is requisite to a delivery to a third person for the use of the grantee. It is sufficient that such intention on the» part of the grantor appears from his declaration and the circumstances of the case. ’ ’
And in Ball v. Foreman, 37 Ohio St. 132, it is held that:
“Where a grantor in a deed delivers the same to a third person as his deed, to be delivered to the grantee at the death of the grantor, and the deed is accordingly delivered to the grantee upon the grantor’s death, the title passes to the grantee as of the date of the first delivery.”
And in Crooks v. Crooks, 34 Ohio St. 610, it is held that:
“Where the grantor delivers his deed to a third person to be delivered by him to the grantee at the death of the grantor, without reserving to himself any control over the instrument, and such deed is delivered accordingly to the grantee, the title passes to the grantee upon such last delivery, and by relation, the deed takes effect as of the date of the first delivery. ’ ’
And the same doctrine was applied and upheld in the case of Patrick v. Parrott, 92 Ohio St. 184 [110 N. E. 725], thus showing this mode of distribution of one’s property in his lifetime by the *703 execution of a deed placed in the custody of a third person, (with no control or power of revocation reserved over said deed) with directions to be delivered after the grantor’s death to the grantee named therein, and such deed is so delivered, is a lawful mode of distribution.
But it was argued on behalf of the plaintiffs that said deeds passed no present title to the grantees named therein and were ineffectual to convey said real estate described therein during the lifetime of the grantor, because of a reservation in each of said deeds, a copy of which is as follows :
“This conveyance is intended by the said grantor, James P. Darling, to lay in escrow until the death of the said grantor, and is not intended to be of any force or effect in the lifetime of the said grantor, but is intended to be of full force and effect immediately upon the death of the said grantor. ’ ’
Taking up the deed made to the defendant, B. C. Darling, which appears to have been the moving cause of this litigation, in the granting clause it recites— “that James Darling, widower, unmarried, in consideration of his love and affection for his son Everett C. Darling and one dollar to him paid by the said Everett C. Darling, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell and convey to the said Everett C. Darling, his heirs and assigns the following described premises (then describing them), and all the estate, title and interest in and to the said premises, together with all the privileges and appurtenances to the same belonging.”
The habendum clause recites the usual covenants of warranty, and then recites the reservation heretofore referred to when said deed shall take' effect. It appears that the deed was signed by the grantor in the presence of witnesses and acknowledged as required by law. While the language used in the reservation referred to (and which appears in all of said deeds) seems to be out of harmony and inconsistent with the recitals in the granting clause, but does it defeat what appears to have been the fixed purpose and object of the grantor in executing them? That he intended to convey title to his children by deeds executed by him at that time we think clearly appears from the testimony of Mr. Staats, the custodian of said deeds, and that he *704 supposed and believed that he had done so also appears from the testimony of various witnesses, pointing out as he did the property so conveyed to them. This intention also harmonizes with the recital in the granting clause in said deeds. As already stated, the insertion in the deeds of the reservation referred to seems to be repugnant to the grant, but where, as in this instance, there is at least a seeming repugnance to the granting clause, does not-the granting clause control? Further referring to the case of Ball v. Foreman, supra, it is said in that case that
“Conceding the usual effect of the habendum clause in a deed to be, to define the extent of the ownership in the thing granted, to be held and enjoyed by the grantee, yet it is not an essential part of a deed, and its effect may not only be qualified and restrained by other parts of the deed, but where it is repugnant to the grant, it has no validity or effect whatever. It also yields to the manifest intent and terms of the grant,” citing Flagg v. Eames, 40 Vt., 16.
“In Jackson v. Meyers, 3 Johns, 395, Chancellor Kent states the rule as follows:
1 ‘ ‘ The intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent, not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect.’ ”
‘ ‘ In Shepard’s Touchstone, 106, it is said:
“ ‘The habendum, as all other parts of the deed, for the most part, shall be taken most strongly against the grantor, and most in advantage of the grantee, yet so as withal it shall be construed as near the intent of the parties as may be. ’ ”
In their brief counsel for defendants cite us to the case of Smalley v. Smalley, 37 O. C. C. 112 (24 N. S. 353), which, involved the construction of a deed placed in the keeping of a third party to be delivered after the death of the grantor, wherein was added to and as a part of the granting clause the following:
“that said grantor reserves full control and use of said premises during his natural life, with full power to sell and convey said premises, the same as if this deed had not been executed, but in case that said grantor becomes deceased, then the title to *705 said land to rest absolutely in said grantees, tbeir heirs and assigns. ’ ’
Except that the grantor reserved the right to sell and convey the premises described, the case cited is not unlike the case at bar, and in that case the court upheld the deed as valid, rejecting the provisions thereof repugnant to the grant.
While as indicated by the authorities that the intention of the grantor is the polar star by which courts must be guided in ascertaining the legal effect of the act of the grantor, as it applies to the execution of these deeds, to render such transfer effectual, it must also appear that the grantor thereby divested himself of the control of the deeds at the time of their delivery to the said custodian. As stated in 1, Devlin, Real Estate, Sec. 325:
“An essential characteristic and indispensable feature of every delivery, whether absolute or conditional, is that there must be a parting with the possession, and 'of the power and control over the deed by the grantor for the benefit of the grantee at the time of delivery. ’ ’
That while the holding of the courts in all jurisdictions on this question of irrevocably divesting one’s self of all control over the deed during the lifetime of the grantor is not uniform, we think it is settled by the weight of authority that such relinquishment of control is necessary.
Here L. N. Staats is the only surviving witness who could and did testify to the instructions given by the grantor as to how these deeds were to be kept and were kept. He testified that the grantor instructed him and directed him “to take charge of the deeds and preserve them and when he (the grantor) was dead to deliver them to the children — to the parties named in them,” and in answer to a question as to where the deeds were kept from the time they were so signed and delivered to him until the death of the grantor, he answered “they were in my safe cabinet.” There is no testimony whatever that the grantor, James P. Darling, deceased, ever exercised or attempted to exercise any control or dominion over said deeds during his lifetime from the day they were thus placed in the custody and keeping of L. N. Staats, as custodian, nor does it appear that the said *706 James P. Darling, deceased, ever saw or even spoke of the deeds to said custodian after their deposit with him. In some states it has been held that even where the grantor has reserved the right to recall a deed, during his lifetime, but did not exercise such right, delivery was held to be effectual. After all, we take it that the question whether the grantor parted with all dominion and control over the deeds in question at the time of their delivery to the custodian is to be determined from all the facts and circumstances attending the execution of said deeds and the instructions given to said custodian.
The intention to part with the property, with a relinquishment of control over the deed must not only appear, but there must also be a delivery of the deed, and such delivery must be accompanied with the intent that it shall be effective as a conveyance. Here the uncontradicted testimony is that these deeds were so delivered to the witness Staats, accompanied with instructions and directions to deliver them to the grantees therein named upon the grantor’s death, and further, that they were so delivered as his deeds, and being a present unconditional delivery, the deeds became immediately operative. After delivery the deeds became executed contracts and all rights resulting from the transaction were fixed. 1, Devlin, Real Estate, Sec. 264. And further, when a deed is delivered to a third person to be delivered to the grantee on the grantor’s death, the title passes as of the time of the first delivery. Such a deed has been held effectual to pass title even though the grantor retains possession of the premises and received their profits during his life. 1, Devlin, Real Estate, Sec. 281; Ball v. Foreman, supra; Kirkwood v. Smith, 212 Ill. 395, and other cases might be cited.
But it is further contended on behalf of the plaintiffs that these deeds speak by the language used therein as showing the intention of the grantor, and that the reservation made shows that he did not intend that they should have any force and effect presently as his deeds. As a legal proposition it is true that the deeds speak per forée of the language used therein, but may not the declarations of the grantor and the circumstances under which the deeds were executed and delivered be shown? In effect, the reservation was that said deeds, executed and placed *707 •with the said custodian were not to be of any force during the grantor’s lifetime, and were not to become effective until his death. If this was not the intent and purpose of the grantor, why the necessity of any reservation? As was said in Ball v. Foreman, supra, “if the grantor intended no present interest to vest in the grantees, why make this reservation? If the right of property was not to vest until the right of possession attached, and both were intended to be postponed until after his death, the reservation in the deed of the right of occupancy during the life of the grantor, was an act wholly without efficacy or effect. How can a reservation be made when no estate is granted? How can a life estate be reserved by the grantor if the grant does not take effect until he dies?” Surely the reasoning in the case cited refutes the contention that the grantor had no present intention of effectuating a transfer of title at that time. Further, the grantor was the owner of said real estate at the time these deeds were executed, and conceding that they were valid, what right did he acquire under said reservation in addition to those conferred upon him by law? He was entitled to a life estate therein, and was not the reservation unnecessary ? As it appears to us it was, in effect, equivalent to a reservation of a life estate only, with the enjoyment of possession in the grantees to be postponed until after his death, and the mere fact that he reserved a life estate and retained possession of the property was consistent with the execution, delivery and deposit of the deeds, for the purpose stated, with said custodian. This provision in no wise affected his right as a life tenant to enjoy the rents, issues and profits of the property during his life.
Further referring to the reservation in the deeds, it will be noticed that the language employed by the scrivener is that “this conveyance is intended by the said grantor, James P. Darling, to lay in escrow until the death of the said grantor” etc. The mere fact that the scrivener saw fit to describe the transaction as an escrow does not change the character of the legal effect of the act done. The question is, What did James P. Darling intend to do and what did he do by way of giving effect to that intention? As is held in Mitchell v. Ryan, cited, “no form of words is necessary to the declaration of a purpose whose *708 delivery is made to a third person for the use of the grantee,” and in Ball v. Foreman, cited, it is said that “the intent, when apparent and not repugnant to a rule of law will control technical terms, for the intent, and not the words, is the essence of every agreement,” and in 1 Devlin, Real Estate, Sec. 319 it is laid down when discussing whether a deed is to be to the deed of the grantor presently or an escrow, that:
“The determination of this question will depend upon the intent of the parties, and the words used and purposes expressed as indicative of that intention rather than upon the name by which the parties may characterize the instrument. The distinction recognized by the cases is this: If the payment of money or the performance of some other condition is the circumstance upon which the future delivery is to depend, the instrument is an escrow; but where the future delivery does not depend upon the performance of any condition, but it is deposited with a third person merely to await the lapse of time or the happening of some contingency, it will' be deemed the grantor's deed presently.”
In the case at bar no condition was to be performed by the grantees named in the deeds; hence the transaction does not fall within the designation of deeds in escrow.
We find from the testimony given upon the trial in the court below that these deeds were delivered by L. N. Staats, the custodian, to-the grantees therein named, upon the death of the said James P. Darling,, in accordance with his instructions and directions, and that each of said grantees thereupon entered into the possession and asserted rights of ownership over the respective parcels of the real estate described in their several deeds, thereby signifying and constituting an acceptance of the same.
Partition of the first four described tracts in said amended petition numbered respectively tracts one, two, three and four is therefore denied; and finding that the defendant, Everett C. Darling, is the owner in fee simple of tracts numbered one and three as described in his cross-petition, his title thereto is ordered to be quieted as against the plaintiffs and each of them, and all persons claiming under them, and further finding that the plaintiffs and the defendant, E. C. Darling, are tenants in common of the tracts of real estate numbered five, six and seven as described *709 in said amended petition, and that plaintiffs and the said defendant are each entitled to a one-fourth interest therein, a writ "of petition may issue for said three described tracts as prayed for, and for this purpose the same commissioners will be named as were named by the court below.
Patterson and Houck, JJ., concur.